Filed 11/25/24  P. v. Smith  CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE CARL SMITH,<br><br>Defendant and Appellant. | C095199<br><br>(Super. Ct. No. 19FE017054)<br><br>[OPINION ON TRANSFER] |

A jury found defendant Jose Carl Smith guilty of, among other offenses, 18 counts of first degree burglary and one robbery count.  The trial court sentenced defendant applying the upper term for the robbery count and separate terms for each of the burglary counts.  On appeal, defendant argues:  (1) the trial court's imposition of the upper term sentence is no longer valid in light of the changes made to Penal Code[1] section 1170 by

---

**1**      Further undesignated statutory references are to the Penal Code.

1

Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567); (2) the trial court should have stayed the sentences related to five of the burglary counts under section 654; and (3) the trial court erred when it denied his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to strike a prior conviction. In light of our Supreme Court's decision in *People v. Lynch* (2024) 16 Cal.5th 730, we remand for a full resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with 18 counts of first degree burglary, along with two counts of attempted robbery, and one count each of robbery, assault with force likely to produce great bodily injury, child endangerment, evading the police, possession of a firearm by a convicted felon, and possession of ammunition by a convicted felon. The prosecution also alleged defendant had a prior strike conviction for burglary from 2004.

At trial, the prosecution introduced evidence in the form of surveillance videos from neighboring homes and data obtained from defendant's cell phone to establish the sequence of events. As relevant to the issues in this appeal, there was evidence concerning the burglary of two homes, one occupied by victim J.B. and the other by victim V.M.

Defendant burglarized J.B.'s house on February 8 and 10, 2019. Global positioning system (GPS) data indicated defendant's cell phone was near the house on the evening of February 8, 2019. Defendant texted a codefendant about items stolen from J.B.'s house shortly thereafter. On February 9, 2019, GPS data again located defendant's cell phone near J.B.'s house, but no entry into the house was alleged. After midnight on February 10, 2019, defendant texted a codefendant with the address of J.B.'s house. GPS data from defendant's cell phone indicated the phone was moving toward J.B.'s house around that time. The cell phone stayed in the area for over an hour, then moved away.

Police later recovered photographs from defendant's cell phone of J.B.'s house and items stolen from J.B.'s house.

V.M. testified he left his house at 6:00 a.m. on April 2, 2019, and returned the next evening at 6:00 p.m. on April 3, 2019. When he returned, he found that someone had broken into his house through a bedroom window and stolen, among other things, approximately 50 firearms, 15,000 rounds of ammunition, jewelry, and 147 pounds of boar meat.

Surveillance cameras from neighboring houses captured the burglary of V.M.'s house. There were four separate entries into the house. On April 2, 2019, codefendant Stephan Gee pulled up to V.M.'s house. Gee walked from V.M.'s house carrying an item, placed it in his car, and drove away after talking on his cell phone at approximately 12:17 p.m. Contemporaneous cell phone records showed Gee texted a picture of one of V.M.'s firearms to another codefendant at 12:51 p.m. The two also conducted a conversation about selling the firearm in the picture. Defendant participated in several of the conversations. At 1:14 p.m., text messages between defendant and a codefendant included the address of V.M.'s house.

At 2:04 p.m., defendant's van arrived at V.M's house. GPS data indicated defendant's cell phone was at V.M.'s house, although no video captured defendant entering the house. At 7:24 p.m., a codefendant texted defendant asking if he was "going back to see if [it was] still empty"; defendant responded affirmatively. The van returned around 10:00 p.m., although no entries were made into the house at that time. At approximately 11:21 p.m., GPS data located defendant's cell phone at a codefendant's address. Defendant's van returned to V.M.'s house around 1:15 a.m. on April 3, 2019, the time of defendant's second entry into the house; GPS data around that time indicated defendant's cell phone was at the house. The vehicle then left the house. Around that time, defendant took a picture of V.M.'s gun safe and sent a text message saying that

3

"there [was] no way to get it out." GPS data located defendant's cell phone at his codefendant's address at 5:03 a.m.

Surveillance photos showed a third entry by defendant at approximately 5:51 a.m. GPS data showed defendant's cell phone was near V.M.'s house at 5:53 a.m. Defendant's van left around 6:20 a.m. Over the following weeks, defendant texted photographs of firearms taken from V.M.'s house, along with discussions about selling the guns in the photographs. There were also photographs on his cell phone showing stolen items in the back of his van.

The jury ultimately found defendant guilty of all charges, except the assault charge, which was dismissed. The trial court found true the allegation that defendant had been convicted in 2004 for burglary, which constituted a prior strike. In evaluating the allegation, the court considered a prior conviction packet submitted by the prosecution, which included the complaint for the 2004 charges; minute orders showing a no contest plea, subsequent conviction, and probation order; and a minute order showing the premature termination of that probation in 2007.

Defendant filed a motion to strike the prior strike under section 1385. At the November 5, 2021 sentencing hearing, defense counsel argued the 2004 conviction was dated and a sentence without the strike would be adequate to serve justice. The trial court noted defendant had three felony convictions following the prior strike, for five total other felony convictions, and noted the high number of convictions in the current case. The court denied the motion, stating defendant "falls precisely within the sentencing structure for repeat offenders that three strikes laws were created to address." The court acknowledged defense counsel's argument about the total sentence involved, but explained that "this is what [the] three strikes law is about."

As to defendant's overall sentence, defense counsel argued section 654 applied to counts 25, 26, and 27, which concerned the burglaries of V.M.'s house, and separately to counts 11 and 12, which concerned the burglaries of J.B.'s house. Defendant argues the

4

burglaries of V.M.'s house and J.B.'s house were each a continuous course of conduct. The trial court stated each of the counts was a separate burglary because this was not a case where defendant "went in and out of the victim's house just because it took multiple trips to get the goods"; rather, defendant was "leaving and coming back at a later time to go get more stuff" from each house.

The trial court noted the Legislature had been revisiting criminal sentencing law and that future legislative enactments could affect the length of defendant's sentence. Considering the potential aggravating factors that could be considered to impose the upper term, the court stated defendant's prior convictions were "both numerous and of increasing seriousness." The court further stated that there were no mitigating factors for the case. The court concluded, "[T]he combination of the specifics of the crime and what [defendant] brought to the crime in terms of [his] history of criminality result in the [c]ourt's conclusion that the only factors that are at play here are aggravating factors. They are worsening factors in terms of imposing a sentence, and, therefore, they call for the upper term." The court imposed a total aggregate sentence of 67 years eight months, including the upper term of nine years for the robbery count. The court declined to stay any of the three counts related to the V.M. burglary or the two counts related to the J.B. burglary under section 654.

Defendant appeals.

DISCUSSION

The parties agree Senate Bill 567 applies retroactively to defendant because defendant's judgment was not final on January 1, 2022, when Senate Bill 567 became effective. (See § 1170, subd. (b), as amended by Stats. 2021, ch. 731, § 1.3.) Defendant contends the matter must be remanded for resentencing because all the aggravating circumstances relied on by the trial court when imposing the upper term were not stipulated to by defendant, found true by a jury beyond a reasonable doubt, or contained in a certified record of conviction. The People agree, as do we.

5

# I

## *Senate Bill 567 Applies Retroactively*

Senate Bill 567 amended section 1170, subdivision (b) to provide that the trial court may impose the upper term only if the facts underlying the aggravating circumstances "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.)  Under amended section 1170, subdivision (b)(3), a trial court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Under *In re Estrada* (1965) 63 Cal.2d 740, an ameliorative change in law applies retroactively to nonfinal judgments in the absence of an express statement to the contrary by the Legislature.  (*People v. Francis* (1969) 71 Cal.2d 66, 75-76.)  A judgment becomes final when it has reached final disposition in the highest court authorized to review it.  (*People v. Rossi* (1976) 18 Cal.3d 295, 304.)  Here, defendant's judgment is not yet final, nor did the Legislature expressly prohibit the retroactive application of the bill.  Thus, Senate Bill 567 applies retroactively to defendant's case.

# II

## *Remand Is Necessary*

In *Lynch*, the court considered when remand for resentencing is required under section 1170, subdivision (b) for defendants who were sentenced before the amended statute's effective date.  (*People v. Lynch*, *supra*, 16 Cal.5th at pp. 742-743.)  The court held, "[A] sentence imposed under former section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those

6

facts were otherwise proved true in compliance with the current statute." (*Lynch*, at p. 743.)

Applying this standard, we cannot conclude beyond a reasonable doubt a jury would have found true all the aggravating factors relied on by the trial court. As noted above, the trial court cited the "nature of the crime itself and [defendant's] own history" when it imposed the upper term sentence. As the People note, the "nature of the crime" may have encompassed aggravating factors such as the amount of violence or bodily harm in the crime; the degree of cruelty, viciousness, or callousness in the crime; the planning or sophistication of the crime; and/or the great monetary value of items taken in the crime. The jury did not find these factors true, nor can we say a jury would have found these factors true beyond a reasonable doubt. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 839-840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].) "Because we cannot find the omission of a jury trial harmless beyond a reasonable doubt as to every aggravating fact relied upon by the trial court to impose an upper term," defendant's sentence must be reversed and the matter remanded for a full resentencing. (*People v. Lynch*, *supra*, 16 Cal.5th at p. 776; italics omitted.)

Because the trial court will conduct a full resentencing, we do not reach defendant's challenges under sections 654 and 1385, which defendant may assert on remand. We conclude similarly as to the People's observation that the sentence enhancement under section 12022, subdivision (a)(1) on count 32 was imposed erroneously at the sentencing hearing.

DISPOSITION

The judgment is reversed.  The matter is remanded for further litigation of the aggravating circumstances and for the trial court to exercise its discretion under the current section 1170, subdivision (b) in a full resentencing.


/s/
ROBIE, J.


We concur:


/s/
HULL, Acting P. J.


/s/
DUARTE, J.


8